**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| LG ELECTRONICS, INC. and | ) | |
| LG ELECTRONICS USA, Inc., | ) | |
| | ) | Case No. **10-cv-03179** |
| *Movants,* | ) | |
| | ) | Judge Elaine Bucklo |
| vs. | ) | |
| | ) | Magistrate Judge Michael Mason |
| MOTOROLA, INC., | ) | |
| | ) | |
| *Respondent.* | ) | |

**REDACTED MEMORANDUM OF THE LG DEFENDANTS IN SUPPORT OF
THEIR MOTION TO COMPEL NONPARTY MOTOROLA, INC. TO
<u>PRODUCE DOCUMENTS AND A WITNESS FOR DEPOSITION</u>**

Joel D. Bertocchi
Daniel L. Farris
HINSHAW & CULBERTSON, LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1771
(312) 704-3000

Christian A. Chu
James A. Fussell, III
FISH & RICHARDSON, P.C.
1425 K Street NW
Washington, DC 20005
(202) 783-5070

*Counsel for Movants*

## I.    INTRODUCTION

LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "LG" or "the LG

Defendants"), movants herein and Defendants in the underlying patent infringement case pending

in the United States District Court for the District of Maryland,[1] served a subpoena issued in this

District on Motorola, Inc. ("Motorola") on January 12, 2010 ("the Subpoena").  [Ex. 1.]  Motorola is

an important third party to the underlying dispute between LG and Plaintiff Vizio, Inc. ("Vizio")

because the patents at issue in that case originated with a wholly-owned subsidiary of Motorola,

which sold them to Vizio not long before the underlying suit was filed.  Motorola also participated

in the development of at least two relevant industry standards that form the basis for Vizio's

underlying claims.  For this reason, Motorola is in possession of unique evidence essential to LG's

defenses in this case, including evidence related to the unenforceability of the patents-in-suit under

the doctrines of estoppel, acquiescence, waiver, and/or implied license based on Motorola's

activities and representations when it was holder of the patents upon which Vizio now claims.

Motorola thus has a more than significant relationship with the patents Vizio is asserting;

indeed, Motorola's role as a source of discovery in the underlying case is as important, if not more

important, than Vizio's.  Based on this history, relationship and knowledge, Motorola and its

employees possess substantial information essential to LG's defenses.

Despite this plain need for relevant discovery from Motorola, over four months have passed

since service of the Subpoena.  During this period, LG has repeatedly engaged Motorola in

telephone conferences and exchanged numerous e-mails and letters, but to little avail.  As of the date

of the filing of this motion, Motorola has produced only a small fraction of the documents it has

that are responsive to the Subpoena.  In fact, since January 28, 2010, Motorola has made a concerted

effort to improperly narrow the scope of the Subpoena to avoid producing responsive documents in

---

[1] The underlying case is *Vizio, Inc. v. LG Electronics, Inc., et al.*, Case No. 1:09-cv-1481 (BEL) (D. Md.).

its possession.  And while it has recently reversed its position in part and offered to produce a

witness for deposition, it continues to refuse to produce documents that could be used at that

deposition.  Because Motorola has refused to comply with the Subpoena and because conferring has

not led to a resolution, LG seeks this Court's assistance.

## II.     BACKGROUND

### A.      Relevance of the Information Sought from Motorola

In the underlying case pending in the U.S. District Court for the District of Maryland ("the

Maryland case"), plaintiff Vizio sought an injunction and monetary damages based on claims that

LG infringed the seven patents at issue by its sales of television products.  [Exh. 2 (June 5, 2009

Complaint).]  But Vizio did not develop these patents; they were filed approximately a decade before

Vizio was even incorporated.  [See *id.*]  Vizio instead bought over ███ patents, including the seven

patents-in-suit, from Motorola and its wholly owned subsidiary, General Instruments Corp. ("GI"),[2]

for a mere ████████ in 2009.  [Exh. 3 (Motorola-Vizio Patent Purchase Agreement) at § 1.8, Exh.

A2, and Exhs. D1-D2.]  Using those patents, Vizio then promptly sued a number of other

companies, including LG, for infringing one or more of them.

LG has raised a number of affirmative defenses and declaratory counterclaims of

noninfringement, invalidity, and unenforceability in the underlying case.  Many of them rest squarely

on facts related to Motorola's prior history with the patents.  For example, one of LG's defenses

asserts that the seven patents-in-suit are unenforceable because Motorola failed to disclose them to

standards-setting organizations despite being required to do so.  [Exh. 4 (Aug. 31, 2009 Answer) at

pp. 9-11.]  Likewise, Vizio's damages claims are contradicted by GI's prior public representations to

the industry that it would license the technology reflected in the patents on a royalty-free basis.

[Exh. 5 (MOT-VIZ 10).]  Similarly, LG has raised a license defense based on certain agreements that

---

[2] Motorola acquired GI in 2000, but kept GI's corporate entity as a wholly-owned subsidiary.

Motorola and/or GI made and that now bind Vizio. [Exh. 4 (Aug. 31, 2009 Answer) at p. 9; Exh. 3 (Patent Purchase Agreement) § 3.1.2.] Information in Motorola's possession about actions it took in connection with the patents is thus highly relevant to LG's defenses.

Motorola cannot disclaim knowledge of these patents, given that GI controlled them for nearly two decades and that Motorola and GI have substantially participated in various standards-setting organizations implicating these patents. Nor can it claim to be unduly burdened by the discovery LG seeks. In fact, the agreement under which Motorola sold the patents to Vizio reflects Motorola's expectation that it would be subject to third-party discovery like that sought here by LG after it sold the patents to Vizio. See Exh. 3 (Patent Purchase Agreement), at § 3.5. That agreement requires Vizio ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████ [Id.]

Before serving the Subpoena, LG first attempted to obtain relevant discovery regarding GI's and Motorola's activities and representations from Vizio, but Vizio disclaimed possession of any such information and expressly directed LG to Motorola. [E.g., Exh. 6 (Oct. 19, 2010 Vizio Interrog. Resp.) at p. 9-11.] Unable to obtain the necessary discovery from Vizio, LG served the January 12, 2010 subpoena that is the subject of this motion to compel. [Exh. 1 (Subpoena).]

**B.     LG's Attempts to Obtain Discovery from Motorola**

Motorola served objections to the Subpoena on January 28, 2010. [Exh. 7 (Jan. 28, 2010 Objections).] In the ensuing four months, LG and Motorola have held a number of telephone conferences and exchanged substantial correspondence, including the following:

- January 28, 2010 – Telephone conference between counsel and e-mail exchanges.
- February 8, 2010 – E-mail requesting update on Motorola's production efforts
- February 9, 2010 – Telephone conference between counsel
- February 11-12, 2010 – E-mail exchange, and letter producing 8 pages of documents
- February 18, 2010 – Letter from LG re Motorola's inadequate production

- February 22, 2010 – Letter from Motorola responding to LG's letter of February 18
- March 2, 2010 – Telephone conference between counsel
- March 4, 2010 – E-mail to LG from Motorola
- March 8, 2010 – LG responds by letter to March 4, 2010 e-mail from Motorola.
- March 12, 2010 – Letter from Motorola replying to LG's March 8 letter
- March 16, 2010 – E-mail from LG requesting telephone conference with Motorola
- March 17, 2010 – Telephone conference between counsel
- April 3, 2010 – E-mail from LG requesting status update
- April 6, 2010 – E-mail exchanges re: status
- April 12, 2010 – Telephone conference between counsel
- April 13, 2010 – Letter from LG confirming parties' positions before moving to compel
- April 14, 2010 – E-mail from Motorola requesting another meet and confer
- April 15, 2010 – Telephonic meet and confer between counsel
- April 15, 2010 – Letter from LG summarizing meet and confer
- April 16, 2010 – E-mail and letter from Motorola responding to LG's April 15 letter
- April 19, 2010 – Letter from Motorola producing certain documents
- April 21, 2010 – letter from LG responding to Motorola's April 16 letter
- April 23, 2010 – E-mail from Motorola
- April 28, 2010 – Letter from Motorola re: final date for production and noting that Motorola believes it satisfied subpoena
- May 6, 2010 – E-mail from Motorola re: final date for production
- May 7, 2010 – E-mail from Motorola producing final set of documents
- May 13, 2010 – Letter from LG noting discovery impasse
- May 14, 2010 – E-mail from Motorola indicating its willingness to offer a witness
- May 17, 2010 – Telephonic meet and confer between counsel re: scope and timing of deposition, and e-mail from Motorola re: same
- May 19, 2010 – Letter from LG noting concerns about limited deposition and inadequate document production, and noting impasse.

On several occasions during these exchanges, LG agreed to narrow the scope of the subpoena to address Motorola's objections. [*E.g.,* Exh. 8 (Mar. 8, 2010 Ltr. fr. J. Fussell) (narrowing deposition topics); Exh. 9 (Apr. 15, 2010 Ltr. fr. J. Fussell) (narrowing document requests).]  But despite these best efforts and LG's demonstrated willingness to compromise, Motorola has barely produced any responsive documents.  To date, Motorola's production consists of:

- List of ████████████████████████████████ (MOT-VIZ 1-7)
- A two-page GI-CableLabs press release (MOT-VIZ 8-9)
- A one-page GI press release (MOT-VIZ 10)
- Agreements between Motorola and Broadcom  (MOT-VIZ 11-89)
- A one-page letter from CableLabs to Motorola (MOT-VIZ 100)

4

- Agreements between Motorola and ▆▆▆▆ (MOT-VIZ 101-126, 370-428, 429-430)
- Agreements between Motorola and ▆▆ (MOT-VIZ 127-240)
- Agreements between Motorola and ▆▆ (MOT-VIZ 241-369)
- Agreement between Motorola and ▆▆▆▆▆ (MOT-VIZ 431-502)

This list reflects no documents related to GI/Motorola's activities in standards-setting organizations, no communications between Motorola and Vizio, no document related to ownership or rights in the patents-in-suit, and none of the host of other licenses expressly identified in the Patent Purchase Agreement between Vizio and Motorola. In fact, Motorola did not even produce that Agreement. Despite this anemic production, Motorola has maintained that it has no other responsive and relevant documents. [Exh. 10 (April 28, 2010 Ltr. fr. M. O'Callaghan) ("With these final documents, Motorola believes it has satisfied its obligations under the LG subpoena.").]

Motorola's failure to produce responsive documents has until recently been aggravated by its refusal to provide a competent corporate witness for deposition. Until a little more than a week before this motion was filed, Motorola refused to offer a witness for deposition other than to authenticate documents (most of which it was refusing to produce), based on a blanket privilege assertion. [*E.g.,* Exh. 11 (April 16, 2010 Ltr. fr. O'Callaghan).] After LG pointed out that the Seventh Circuit does not condone blanket privilege claims and indicated its willingness to file this motion, Motorola offered to produce a witness while still asserting a lack of corporate knowledge about the deposition topics (and still not agreeing to produce additional documents). [Exh. 12 (May 14, 2010 E-mail fr. Ms. O'Callaghan).]

Motorola's offer to produce a witness represents progress, but could not resolve this dispute because a deposition cannot be separated from the subpoenaed documents. Because LG needs those documents to take a meaningful deposition, conducting one before production is complete would likely result in the need for a second deposition at which those documents could be used. [Exh. 13 (May 19, 2010 Ltr. fr. J. Bertocchi).] Having reached an impasse on this discovery dispute,

5

LG had no choice but to bring this matter to the attention of this Court.

## III.   LEGAL STANDARD

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party ...." Fed. R. Civ. P. 26(b)(1).  Discovery may be obtained from non-parties by subpoena issued under Fed.R. Civ. P. 45.  "If the discovery appears relevant, the party objecting to the discovery request bears the burden of showing why that request is improper." *Rubing v. Islamic Republic of Iran*, 349 F.Supp.2d 1108, 1111 (N.D. Ill. 2004).  In order to resist discovery, a respondent must present affirmative and compelling proof that the requested discovery is improper; an uncorroborated assertion will not suffice.  *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2005 WL 1300778, *1 (N.D. Ill. April 28, 2005).  If the served party does not comply, the serving party may ask the issuing court to compel production or inspection.  Fed R Civ. P. 45(c)(2)(B)(ii).

## IV.   ARGUMENT

### A.   Motorola Should Be Compelled to Search and Produce the Requested Documents

The Subpoena requests the production of documents related to, among other things:

(1)   GI/Motorola's involvement and participation in standards setting organizations, [Exh. 1 (Subpoena) at document requests nos. 16-20];

(2)   Vizio's purchase of the patents-in-suit, [*id.* at document requests nos. 3-4, 22, 32, 44, and 47];

(3)   ownership and rights in the patents-in-suit, [*id.* at document requests nos. 33-34, 43, and 46]; and

(4)   licenses and products related the patents-in-suit.  [*Id.* at document requests nos. 9, 30, 35-39.]

Each of these four categories is highly relevant to LG's defenses, and is addressed in turn below.

### 1.   Documents related to GI/Motorola's activities with standard setting organizations

#### a.   Standard setting organization-related documents are relevant

Documents related to GI/Motorola's activities with standards-setting organizations

("SSOs") are highly relevant to LG's affirmative defense of standard estoppel.  In the underlying case Vizio alleges that LG's compliance with two television industry standards—the SCTE 07 Standard and the ITU-T Recommendation J.83 Annex B—demonstrates infringement of the patents-in-suit.  [Exh. 14 (Feb. 11, 2010 Vizio's Suppl. Resp. to Interrog.) at 4-5.]  In response, LG has raised a standards estoppel defense based on the Federal Circuit's ruling in *Qualcomm, Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008) (holding patents unenforceable based on patentee's failure to comply with SSO unwritten requirement to disclose patents).  Under Qualcomm, SSO participants have a duty to disclose their patents based on, among other things, the members' "understanding" and "treatment" of the SSO's intellectual property policy.  *Id.* at 1016.

Because GI/Motorola participated in the development and implementation of these two standards, its understanding and treatment of the patent policies of the SCTE and ITU-T organizations are highly relevant to LG's defense.  LG first sought discovery on the issue from Vizio, but Vizio claims that it does not possess such information.  [Exh. 14 (Feb. 11, 2010 Vizio's Suppl. Resp. to Interrog.) at 5-6 (stating, in part, that "Vizio is without knowledge as to whether GI and/or Motorola had a duty to disclose any of the patents-in-suit to the SCTE and/or ITU-T.  Vizio is also without knowledge as to whether GI and/or Motorola disclosed any of the patents-in-suit to the SCTE and/or ITU-T").]  LG must therefore turn to Motorola.

Beyond the SCTE and ITU-T standards, GI/Motorola's standards activity also limits the exclusionary rights that Vizio has in the patents-in-suit, because



[Exh. 3 (Patent Purchase Agreement) at § 3.1 (emphasis added).]  Accordingly neither LG nor the

court in the underlying case will be able to assess the scope of Vizio's right to pursue the underlying case without an examination of Motorola's and GI's activities, statements, and commitments to standards-setting organizations—including but not limited to the SCTE and ITU.

###### b.     Motorola is still in possession of SSO-related documents

There is no doubt that Motorola still has documents and personnel knowledgeable about its standards-setting activities.  Indeed, the existence of at least some of them is confirmed by its privilege log and third party documents.  First, Motorola's own privilege log entries demonstrate that it has in its possession SSO-related documents, including documents pertaining to the ITU-T J.83 technology standard.  [Exh. 15 (Apr. 16, 2010 Motorola privilege log).]  Indeed, the privilege log's description columns describe entries 1 through 11 to be ████████████████████████ [Id.]

Second, documents independently obtained from third parties show that GI/Motorola has been extensively involved in the activities of various SSOs.  For example, the American National Standards Institute ("ANSI"), in response to a subpoena, produced over twenty pages of Motorola submissions in which Motorola publicly committed to comply with various patent policies for certain SSOs.  [Exh. 16 (ANSI production of Motorola submissions).]  Beyond these public statements, Motorola's representatives, including Ms. Andrea Harriman, have also participated in deliberations and voted in favor of adopting the very SCTE 07 standard that is at issue in the underlying case.  [Exh. 17 (SCTE 07 Designation of Standard).]  And GI's representatives, such as Ms. Narisa Chu, were active in the adoption of the previous version of the SCTE technology standard before Motorola's acquisition of GI.  [Exh. 18 (SCTE DVS 031 Designation of Standard).]  Nonetheless Motorola has failed to produce any documents related to the SCTE DVS and SCTE 07 proceedings, or even to its public commitments made to various SSOs.

###### c.     Motorola cannot shield relevant and responsive SSO-related documents under an improper claim of privilege

That Motorola has SSO-related documents in its possession is apparent from its privilege

log. [Exh. 15 (Apr. 16, 2010 Motorola privilege log).] As the log's descriptions attest, these documents relate to the ███████████████ which Motorola concedes to be relevant. [Id.]

Despite their relevance and responsiveness, Motorola has shielded these documents from discovery by asserting the attorney-client privilege. A simple review of the privilege log produced by Motorola undermines its claim. For example, entry No. 3f does not list an attorney as either the author or the recipient. [Id.] While the entry lists an attorney in the "cc" line, merely copying a lawyer on a document does not render it privileged. *In re General Instrument Corp. Securities Litigation,* 190 F.R.D. 527, 530 (N.D. Ill. 2000). Along these same lines, Motorola claims privilege over documents that lack any indicia of privilege, such as the identity of the lawyer providing the legal advice or his position. These documents include, for instance, entry nos. 6, 8, 10-11. [Exh. 15 (Apr. 16, 2010 Motorola privilege log).] These vague descriptions are insufficient to substantiate privilege. See *Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*, 2003 WL 21911066 at *5 (N.D. Ill., Aug. 7, 2003) (requiring Motorola to produce documents not adequately described in a privilege log).

In addition, Motorola has withheld documents based on an improper work-product claim. That doctrine protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3). The test is whether "the document can fairly be said to have been prepared or obtained because of the prospect of litigation," and that "prospect" must be more than "'a remote prospect of future litigation.'" *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983) (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir.1977)). Given the absence of any relevant litigation in 2007-08, Motorola's broad work-product claim over an ████████ ███████████████████████████████████ (Doc. Nos. 1-9), a 59-page document dated December 2007 (entry Nos. 6, 8, 11), and a 66-page document dated April 1997 (entry No. 10) is unsupported. [Exh. 15 (April 16, 2010 Privilege Log).]

9

Motorola is no stranger to the practice of using overly broad assertions of privilege or work-product protection to shield responsive documents, and this Court should view its claims with skepticism. See *Zenith*, 2003 WL 21911066 at \*2 and at \*5 ("Motorola and GI do not cite to any correspondence or other evidence in support of [the conclusion that certain documents were produced in anticipation of litigation], or to any specific portion of the voluminous summary judgment record. This is insufficient to meet Motorola's and GI's burden of establishing when they began to anticipate litigation; it is not the role of the court to sift through the record to make that determination."). At the least, the Court should exercise its independent judgment by conducting an *in camera* review of the documents listed in the privilege log's 13 entries, as the court did in *Zenith*, rather than relying on Motorola's inadequate descriptions. *Id.* (*in camera* review of documents where Motorola asserted attorney-client privilege and work product protection).

### 2. Documents Related to Vizio's Purchase of the Patents-In-Suit

Documents regarding Vizio's purchase of the patents-in-suit from Motorola are equally relevant to LG's defenses. For example, while Vizio maintains it is entitled to damages for the infringement of seven patents based on LG's sales of television products that ███████████ ██████████████████████, Motorola sold those patents to Vizio for a fraction of that amount. Indeed, Vizio paid Motorola a paltry █████████ for more than █████████, including the seven patents-in-suit. [Exh. 3 (Patent Purchase Agreement at § 1.8).] While it is perhaps possible that Vizio simply made a great deal for itself, the greater likelihood that Motorola is aware of flaws in the patents represents an ample basis for requiring it to produce communications that may reflect those issues. Certainly, Motorola's valuation of those patents, its determination of their validity and enforceability, and the circumstances surrounding the sale of the patents to Vizio are all relevant to LG's defense of the underlying case, and Motorola is uniquely in possession of such information.

10

The relevance of this information is further illustrated by another part of the Patent Purchase Agreement, which (at Exhibit B) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. [*Id.* at § 1.9 & Exh. B.] This list includes three companies—LG, Sony, and Funai—against whom Vizio has asserted the patents-in-suit. [*Id.;* see also Exhs. 19-20 (documents showing litigation adverse to Sony, and against Funai).] That Vizio promptly sued Motorola's ▮▮▮▮▮▮▮▮▮▮ after acquiring these patents raises questions about their sale and the negotiations leading to the sale.

Motorola does not actually dispute the relevance of this information. It nonetheless refuses to produce communications with Vizio because they primarily occurred in e-mails, and *the parties to the underlying case* have agreed *in that case* not to produce e-mails. Notwithstanding that agreement, Motorola (which is not a party to either the underlying case or the e-mail agreement) has an obligation to produce responsive, non-privileged e-mails pursuant to Rule 45.[3] Despite Motorola's contrary assertion, the fact that e-mails regarding its discussions with Vizio are unavailable from Vizio due to the agreement does not excuse Motorola from its independent obligations under the Subpoena and Rule 45 to produce them, nor does it make such a production unduly burdensome. See *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 998 (10th Cir. 1965) ("[A] person may not avoid a subpoena by saying that the evidence sought from him is obtainable from another."); *State Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C.*, 2007 WL 2993840 at *1 (E.D.N.Y., Oct. 10, 2007) ("[N]othing in the Federal Rules of Civil Procedure requires a litigant to rely solely on discovery obtained from an adversary instead of utilizing subpoenas."); *In re Bergeson*, 112 F.R.D. 692, 695 (D. Mont. 1986) (compelling production from third parties despite assertions that documents sought are available from others); see also *Mosley v. City of Chicago*, 252 F.R.D. 445, 449 (N.D. Ill. 2008) (citing FRCP 45(c)(3)(A)(iv)) ("nothing in Rule 45 authorizes a non-party to determine whether a subpoena subjects it to undue burden. Only a court on proper application can do that.").

---

[3] Contrary to Motorola's assertion, LG did request these documents from Vizio, but Vizio has refused to provide them. [Exh. 24 (May 19, 2010 Ltr. fr. J. Evans to J. Fussell).]

Obviously, producing e-mails in the underlying lawsuit amounts to searching, reviewing and producing e-mails from a large number of LG and Vizio employees over the course of many years, a process which is very burdensome and expensive for the parties (and which they have mutually decided to forego). But LG is not requesting correspondence, including e-mails, from a large number of GI/Motorola employees over a range of many years. Rather, LG is simply asking for communications between Motorola and Vizio, likely confined to a specific set of persons involved in the sale of the patents, that relate to those patents and that occurred barely a year ago in 2009. This narrowly targeted request will not unduly burden Motorola, especially since ████████████

████████████████████████████████████████. [Exh. 3 at § 3.5.]

Finally, as an illustration of the narrowness of LG's request (and its consequent lack of burden), Motorola's own privilege log identifies about ████████████████████████

████████████████████████████████████████. [Exh. 15 (Motorola April 16, 2010 Privilege Log).] This "sample" suggests strongly that LG's request for e-mails to or from a defined subset of Motorola or GI personnel on the subject will not turn up hordes of e-mails from hordes of e-mail users that will require burdensome review. Any undue burden argument is thus illusory and should be rejected.

### 3. Documents Related to Ownership and Rights in the Patents-In-Suit

Documents regarding ownership and rights are equally relevant to LG's defenses. For example, ████████████████████████████████████████████

████████. [See generally Exh. 3 (Patent Purchase Agreement).] Vizio's complaint in the underlying case nonetheless alleges that it is the current assignee of that patent. [Exh. 2 (Vizio Complaint) at ¶ 29.] If Motorola retained any rights in one of these patents, then Vizio cannot assert that patent against LG. *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256 (Fed. Cir. 2007) (patentee lacked standing to assert patent infringement action because it lacked ownership in the patent).

As another example, while the Agreement under which most of the patents-in-suit were sold to Vizio is an agreement between Vizio and Motorola, Inc., Vizio's interrogatory responses disclose, for each patent, a chain of assignments that does *not* involve Motorola, Inc. [Exh. 21 (Mar. 18, 2010 Vizio Resp. to Interrog.) at 5.] As demonstrated by the excerpted entries below for one of these patents, title remained with GI – not Motorola – until allegedly transferred to Vizio:

| Patent | Recorded | Assignor(s) | Assignee | Reel/Frame |
|---|---|---|---|---|
| 5,233,629 | 7/26/1991 | Woo H. Paik<br>Scott A. Lery | General Instrument Corporation | 005787/0464 |
| 5,233,629 | 7/26/1991 | Chris Heegard | General Instrument Corporation | 005787/0466 |
| 5,233,629 | 4/21/1998 | General Instrument Corporation (GIC-2) | General Instrument Corporation (GIC-4) | 009187/0956 |
| 5,233,629 | 7/2/2009 | General Instrument Corporation (GIC-4) | Vizio, Inc. | 022910/0091 |

[*Id.*] These facts call into question the authority of Motorola, Inc. to dispose of patents owned by another legal entity, even if that other legal entity is its wholly-owned subsidiary. A defective transfer of title would strip Vizio of standing to assert these patents. *Israel Bio-Eng'g*, 475 F.3d 1256. These facts thus form a good-faith basis to require Motorola to produce the requested documents.

For at least these reasons, documents related to ownership and rights in the patents-in-suit, including communications between Vizio and Motorola/GI, are highly relevant. And Motorola has not provided any reason to refuse to provide discovery on these issues.

#### 4. Licenses and Documents about Products Related to the Patents

Documents regarding licenses and products related to the patents-in-suit also affect LG's defenses and damages theory in the underlying case. For example, the Patent Purchase Agreement obligates Vizio to honor ███████████████████████████████████████████████

███████████████████████████████████████████ [Exh. 3 (Patent Purchase Agreement) at § 3.1.1.] These ████████████████████████████████████████████████████████████████ [*Id.* at Exh. C.] To date, Motorola has produced only a few of the licenses on this list, claiming that the Purchase Agreement only identifies two licenses—████████████████████—as covering the

13

patents-in-suit. [*Id.* at § 5.1.6.] But Motorola's own limited production undermines this claim. Indeed, GI's license agreement with ▮▮▮▮▮▮▮▮ expressly names four of the patents-in-suit by number and covers the other three by implication. [Exh. 22 (▮▮▮▮▮▮▮▮▮▮▮▮) at Mot-Viz 451.] The same license even includes the specification of the SCTE DVS technology standard on which Vizio relies as evidence of infringement. [*Id.* at Mot-Viz 453-471.] The ▮▮▮▮▮▮▮▮ license therefore undermines Motorola's assertion, and supports requiring complete production so that LG can perform its independent assessment of the scope of the licenses.

As another example, Motorola's limited production contains a press release indicating that GI, which Motorola acquired in 2000 and for which Motorola became a successor-in-interest, agreed to license the patents-in-suit on a royalty-free basis to any interested company. [Exh. 5 (MOT-VIZ 10).] The press release provides no background information or explanation for GI's action. The fact that Motorola and/or GI was granting royalty-free licenses for patents on which Vizio is now effectively claiming astronomical amounts in damages affects LG's damages case and supports a claim of implied license. Documents covered by the subpoena would address this issue.

In sum, Motorola and its employees have documents (such as licensing and ownership documents) and information which are highly relevant to LG's defenses. And because this critical background information is in Motorola's sole possession, LG cannot obtain this information from Vizio or other parties. Motorola should produce this crucial information.

**B.        The Deposition of a Motorola Witness**

In addition to the production of documents, the Subpoena asked that Motorola produce a witness for deposition to address the adequacy of its document collection and to respond to certain narrowly focused topics that LG identified. [Exh. 8 (Mar. 8, 2010 Letter from Fussell (agreeing to focus the deposition to topics to Nos. 2-4, 7, 9- 13, 18-22, and 28)).] Shortly before the instant motion was filed, Motorola agreed to produce a witness for deposition, though there has been no

discussion of the scope of the deposition.  LG appreciates Motorola's willingness to present a

deposition witness, though it believes that the Court should rule on LG's request for documents first

in order to avoid, if possible, the need for a second deposition to discuss the contents of documents

this Court may order produced.

      In light of Motorola's willingness to present a witness, LG will not at this point address

arguments previously made by Motorola in opposing any deposition, including blanket claims of

privilege and the purported unavailability of a deponent with knowledge of the issues LG wants to

raise.  LG reserves the right to return to the Court in the event the proposed deposition does not

occur or does not satisfy Motorola's discovery obligations, but will work with Motorola to avoid

bringing this issue before the Court if possible.

## V.    CONCLUSION

      For the reasons stated above, this Court should compel Motorola to comply with the

Subpoena.


Dated:  May 27, 2010                Respectfully submitted,


                    By:   /s/ Daniel L. Farris

                    Joel D. Bertocchi
                    Daniel L. Farris
                    HINSHAW & CULBERTSON, LLP
                    222 North LaSalle Street, Suite 300
                    Chicago, IL 60601-1771
                    (312) 704-3000

                    Christian A. Chu
                    James A. Fussell, III
                    FISH & RICHARDSON, P.C.
                    1425 K Street NW
                    Washington, DC 20005
                    (202) 783-5070

                    *Counsel for Movants*
                    *LG Electronics, Inc. and LG Electronics U.S.A, Inc.*

15

**CERTIFICATE OF SERVICE**

I, Daniel L. Farris, an attorney, hereby certify that on May 27, 2010, I filed the attached MEMORANDUM OF THE LG DEFENDANTS IN SUPPORT OF THEIR MOTION TO COMPEL NONPARTY MOTOROLA, INC. TO PRODUCE DOCUMENTS AND A WITNESS FOR DEPOSITION, with exhibits, using the Court's CM/ECF system, which will also cause electronic delivery to counsel for Respondent Motorola, Inc.


 /s/ Daniel L. Farris