UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LG ELECTRONICS, INC. and <br> LG ELECTRONICS USA, INC., <br> <br> Plaintiffs, <br> v. <br> <br> MOTOROLA, INC., <br> <br> Defendant. | Case No. 10 CV 3179 <br> <br> Magistrate Judge Young B. Kim <br> <br> August 5, 2010 |

**MEMORANDUM OPINION and ORDER**

Before the court is the motion of LG Electronics, Inc. and LG Electronics USA, Inc. (collectively "LG" or the "LG Defendants") to compel nonparty Motorola, Inc. ("Motorola") to produce documents and a witness for deposition. For the following reasons, LG's motion is granted in part and denied in part:

**Background and Procedural History**

The LG Defendants are parties in an underlying patent infringement case captioned *Vizio, Inc. v. LG Electronics, Inc.*, Case No. 1:09-cv-1481, pending in the United States District Court for the District of Maryland. Motorola is a third-party to the dispute between Vizio, Inc. ("Vizio") and LG. In the underlying lawsuit, Vizio alleges that LG infringed seven patents (the "Vizio patents" or the "patents") that Vizio purchased from Motorola in April 2009. Motorola acquired the patents through the purchase of General Instrument Corporation ("GI") in January 2000.

On January 12, 2010, LG served Motorola with a subpoena issued by the United States District Court for the Northern District of Illinois requesting the production of documents for 47 categories pertaining to the patents at issue in the underlying case.[1] (LG's Ex. 1.) Fourteen days later, on January 28, 2010, Motorola served comprehensive objections to LG's subpoena. (LG's Ex. 7.) LG and Motorola then met and conferred by telephone and via written correspondence approximately 30 times to resolve their disputes related to the subpoena.

Motorola contends that in its initial telephone conversation, LG narrowed the scope of the subpoena and identified four categories of documents for which it sought production. (Motorola's Resp. at 2.) These four categories of documents included: (1) the prosecution files for the Vizio patents as well as any reduction to practice; (2) GI's communications and involvement with two television standards setting organizations, including ANSI[2]/SCTE[3] 07 (formerly SCTE DVS031) titled "Digital Video Transmission Standard for Cable Television" ("SCTE 07") and the ITU-T[4] Recommendation J.83 Annex B, titled "Series J: Transmission of Television Sound Programme and Other Multimedia Signals" ("ITU-T J.83"); (3)

---

[1] The subpoena also lists requests for 28 deposition topics; however, Motorola has agreed to produce a corporate witness to be deposed. (LG's Mem. at 2.)

[2] ANSI stands for American National Standards Institute.

[3] SCTE stands for Society of Cable Telecommunications Engineers.

[4] ITU-T stands for the International Telecommunications Union's Telecommunication Standardization Sector.

2

communications between Motorola and Vizio regarding the purchase of the Vizio patents and any due diligence; and (4) licenses referenced in the Motorola-Vizio Patent Purchase Agreement ("purchase agreement") pertaining to the Vizio patents. (Id.)

Motorola claims that it provided LG with all non-privileged documents responsive to these four categories, and a privilege log for those documents withheld. (Motorola's Resp. at 2.) But despite Motorola's understanding that it had complied with the narrowed scope of the subpoena, Motorola asserts that LG subsequently demanded additional categories of documents. (Id. at 3.) As a result, Motorola engaged in extensive telephone, e-mail and written communications with LG, and ultimately produced an additional 500 or so pages of non-privileged documents. (Id.) Motorola asserts that its ability to respond to the subpoena is limited by the fact that: (1) Motorola transferred its patent files to Vizio and did not retain a copy of those files; (2) the events at issue took place 15 years ago which was well before Motorola acquired GI; (3) the underlying lawsuit is centered around the development of two industry standards which were drafted and promulgated in the mid-1990's; and (4) LG either already has the documents in its possession or they are available directly from Vizio. (Id.) Motorola also objects to producing those documents that are available from Vizio, but that the parties themselves had chosen not to pursue as part of the discovery plan in the underlying lawsuit, including e-mail communications. (Id. at 3-4.)

LG, on the other hand, asserts that despite its willingness to narrow the scope of the subpoena to address Motorola's concerns, Motorola "barely produced any responsive

3

documents." (LG's Mem. at 4.) Specifically, LG points out that Motorola only produced certain documents which include several press releases, a one-page letter, and various licensing agreements between Motorola and other companies. (Id. at 4-5.) LG filed the instant motion on May 24, 2010, asking the court to compel Motorola to produce the responsive documents. This matter was referred to this court on June 8, 2010. Motorola filed its response on July 9, 2010, and LG filed its reply on July 21, 2010.[5]

## Analysis

LG's motion to compel is granted in part and denied in part. Federal Rule of Civil Procedure 26 governs the scope of discovery in civil cases. Pursuant to Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears to be reasonably calculated to lead to discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). With respect to motions to compel, the Seventh Circuit has instructed that a "district court may grant or deny the motion in whole or in part, and similar to a ruling on a request for a protective order under Rule 26(c), the district court may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines, Inc.*, 95 F.3d 492,

---

[5] The parties filed redacted briefs with the clerk's office, but provided the court with unredacted versions of the briefs. The court has made every effort to ensure that this opinion does not contain any confidential information. The parties should contact the court immediately if the opinion contains any confidential information.

4

496 (7th Cir. 1996). District courts are afforded broad discretion in resolving discovery disputes. *See Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 629 (7th Cir. 2008).

## A. Documents Pertaining to Standards-Setting Organizations[6]

LG first contends that Motorola should be compelled to produce documents related to GI and Motorola's activities with standards-setting organizations ("SSOs"). (LG's Mem. at 6-10.) LG contends these documents are relevant to LG's standards estoppel affirmative defense because, in the underlying lawsuit, Vizio alleges that LG's compliance with SCTE 07 and ITU-T J.83 amounts to infringement of the Vizio patents. (Id. at 7.) LG raises its affirmative defense on the basis of the Federal Circuit's ruling in *Qualcomm, Inc. v. Broadcom Corp.*, 548 F.3d 1004 (Fed. Cir. 2008), holding that the enforcement of a patent is precluded where an SSO member is subject to a disclosure duty and subsequently breaches that duty. Thus, LG contends that because GI and Motorola participated in the development of the SCTE 07 and ITU-T J.83 industry standards, its understanding and treatment of these patent policies are highly relevant to LG's defense. (Id.) LG points out that it first sought discovery on this issue from Vizio, but Vizio claimed it did not know whether GI and Motorola had a duty to disclose or actually disclosed any of the patents at issue to the relevant SSOs, including SCTE 07 or ITU-T J.83. (Id.)

---

[6] The documents requested by LG's subpoena include request numbers 16, 17, 18, 19, and 20.

Motorola, however, contends that contrary to LG's unsupported contention, it did not participate in the development of the two industry standards that form the basis of Vizio's claims in the underlying lawsuit because these standards were promulgated before Motorola acquired GI. (Motorola's Resp. at 6-7.) Motorola represents that it provided LG with all of the non-privileged documents pertaining to SCTE 07 and ITU-T J.83 that it has in its possession, custody, and control after conducting a reasonable search of its records. (Id. at 7.) Furthermore, Motorola informed LG that it did not make any intellectual property rights ("IPR") disclosures regarding the Vizio patents to ANSI, SCTE, or ITU, and produced a number of documents including two press releases regarding GI's involvement with these standards, one voting ballot regarding a 2006 revision to SCTE 07, and a privilege log of a series of e-mails.[7] (Id. at 5.)

The court agrees with Motorola and finds that LG's contention—that Motorola participated in the development of the SCTE 07 and ITU-T J.83 industry standards—is without support. Motorola produced the Affidavit of Mark Schmidt ("Schmidt"), a Motorola technical staff employee[8], to support its position that "[t]here is no one at Motorola who participated in the drafting or promulgating of SCTE 07 or [ITU-T] J.83." (Schmidt Aff. ¶ 10.) Schmidt further testified that Motorola provided LG "with the names of five individuals it believed may have been involved in the drafting or promulgating of SCTE 07 or [ITU-T]

---

[7] There is one e-mail from 1997, five e-mails from 2007, and 25 e-mails from 2008.

[8] Schmidt was previously employed at GI as a Senior Staff Engineer. (Schmidt Aff. ¶ 2.)

J.83. These individuals are not employed by Motorola, nor subject to its control." (Id.) Moreover, Motorola has represented that it did not make any IPR disclosures relating to the Vizio patents for these two industry standards, (Motorola's Ex. F, April 28, 2010 Ltr. fr. M. O'Callaghan), and has also represented that it produced all of the non-privileged documents pertaining to SCTE 07 and ITU-T J.83 to LG that it has in its possession, custody and control after conducting a reasonable search of its records. (Motorola's Resp. at 7.) While LG claims a Motorola employee, Andrea Harriman, participated in deliberations and voted in favor of adopting the SCTE 07 standard at issue in this case, Motorola represents that Harriman participated in a vote regarding a revision to the SCTE 07 standard approximately ten years after the SCTE 07 standard was drafted and promulgated. (Id. at 7 n. 8.) Motorola also produced the only document it found related to her participation in this later revision. (Id.)

Furthermore, to the extent that LG requests that Motorola produce documents from other SSOs, LG has failed to establish that these documents are necessary to defend the underlying case. So while LG may have obtained documents from third-parties showing that GI and Motorola have been involved in the activities of other SSOs, LG has not established how these standard-setting activities relate to their claims because there are no other standards referenced in Vizio's complaint or LG's Answer.

However, Motorola is not entitled to withhold the documents described in its privilege log under the attorney-client and work-product privilege. Pursuant to Federal Rule of Civil

7

Procedure 26(b)(5), when a party withholds information otherwise discoverable by claiming privilege, the party must then make the privilege claim and then disclose a privilege log containing the following information for each document: (1) the date, the author and all recipients, along with their capacities; and (2) subject matter of the document, purpose for its production, and an explanation as to why the document is privileged or immune from discovery. The explanation must be sufficiently specific to allow the court to determine whether the claimed privilege or immunity is applicable.

In this case, for all 13 categories of documents withheld from production, Motorola asserted the attorney-client and work-product privilege. The attorney-client privilege protects verbal and written communications exchanged in confidence between a client and an attorney for the purpose of obtaining legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981). The court must determine whether legal advice of any kind was sought from an attorney in his or her capacity as an attorney, whether the material sought in discovery contains communication related to the purpose of seeking such legal advice and whether such communication was made in confidence. *See Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).

Unlike the attorney-client privilege, work-product privilege protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing, evaluating and preparing a client's case. *See Fed. R. Civ. P. 26(b)(3); United States v. Smith*, 502 F.3d 680, 689 (7th Cir.2007). The court must determine whether the documents sought in discovery

contain an attorney's thought processes and mental impressions. *See Sandra T.E.*, 600 F.3d at 621-22. The courts in the Northern District of Illinois have construed Rule 26(b)(3) to limit this protection to one who is a party (or a party's representative) to the litigation in which discovery is sought. *See Cook v. City of Chicago*, No. 06 CV 5930, 2010 WL 331737, *1 (Jan. 26, 2010).

Motorola cannot withhold the 13 categories of documents from production. First, the privilege log fails to comply with the requirements of Rule 26(b)(5). Most notably, Motorola fails to explain why the withheld documents fall within the protection of the asserted privilege. Identifying the reason for withholding the documents as "Attorney Client/Work Product" does not explain how these privileges attach to the documents. Second, contrary to Motorola's position, neither the attorney-client nor work-product privilege attaches to these documents. The court examined all 13 categories of documents in camera but did not notice any information from which to infer that these documents contain communications made for the purpose of seeking or providing legal advice or the thought processes or mental impressions of an attorney in anticipation of litigation. As to categories 1-5, 7 and 9, these e-mails do not show that they were exchanged for the purpose of seeking or rendering legal advice from an attorney. Instead, these e-mails were exchanged for the purpose of investigating the development of J.83 over the years when a new draft recommendation came out in December 2007. Document 6 is the December 2007 draft recommendation issued by a third-party organization, ITU, and appears to be identical to documents 8 and 11.

9

Document 9 is the April 1997 version of the ITU-T J.83. Standards. As to categories 12 and 13, the content of the forms shows that these were prepared to be disclosed to third parties. Even if these forms were not actually disclosed to others, they were not prepared to be kept confidential.

Also, because LG contends that GI participated in the development and implementation of SCTE 07 and ITU-T J.83[9], and because Motorola did not address this contention, Motorola is directed to conduct a reasonable search of its records as it relates to GI's participation in the development and implementation of SCTE 07 and ITU-T J.83. If Motorola's search does not turn up any responsive GI documents, Motorola is directed to submit an affidavit to LG detailing its search activities of its records and attesting to the absence of any responsive documents.

**B.    Documents Pertaining To Vizio's Purchase Of The Patents**[10]

LG next argues that documents related to Vizio's purchase of the patents from Motorola are relevant to LG's defenses. (LG's Mem. at 10-12.) LG contends that Motorola is uniquely in possession of documents pertaining to Motorola's valuation of the patents, the validity and enforceability of the patents, and the circumstances surrounding the sale of the patents to Vizio, which are relevant to LG's defenses in the underlying lawsuit. (Id. at 10.)

---

[9] LG points out that Narisa Chu, a GI representative, was active in the adoption of the previous version of the SCTE standard before Motorola's acquisition of GI. (LG's Mem. at 8.)

[10] The documents requested by LG's subpoena include request numbers 3,4, 22, 32, 44, and 47.

LG is suspicious of the enforceability of the Vizio patents because Motorola sold these patents at a very low price and suspects that Motorola did so because it recognized certain defects with the Vizio patents. LG points out that Motorola objects to producing this information because it consists primarily of e-mail communications, and Vizio and LG have agreed that they will not produce e-mail communications in the underlying lawsuit. (Id. at 11.) LG, however, asserts that even though these e-mail communications cannot be obtained from Vizio because of the agreement not to seek e-mail communications, LG argues that Motorola has an independent obligation pursuant to the subpoena and Federal Rule of Civil Procedure 45 to produce them. (Id.) Thus, LG avers that it is simply requesting that Motorola produce a narrowly defined set of communications "between Motorola and Vizio, likely confined to a specific set of persons involved in the sale of the patents, that relate to those patents and that occurred barely a year ago in 2009." (Id. at 12.)

Motorola, on the other hand, contends that it should not be required to produce any document that is available from Vizio, including, but not limited to, any electronic communications. (Motorola's Resp. at 10.) Thus, Motorola objects to the production of materials that are equally available from Vizio absent some showing by LG that it attempted to obtain certain materials from Vizio, but was unable to do so through no fault of its own. (Id. at 12.) Next, Motorola asserts that it is LG's own fault that it does not have the electronic communications it now seeks, because it chose to enter into an agreement with Vizio not to produce e-mail communications as part of the discovery plan in the underlying

case. (Id. at 12-13.) In essence, Motorola asserts that LG's request for e-mail communications is a deliberate imposition of undue burden and expense on Motorola because it imposes on Motorola a task that the parties themselves have determined to be unduly burdensome and onerous. (Id.)

The court grants LG's motion to compel to the extent that Motorola is ordered to produce those non-privileged documents, if any, reflecting Motorola's predecisional analysis of the value of the Vizio patents and the validity and enforceability of these patents. If after a reasonable search of these documents, Motorola finds that responsive documents are subject to certain privileges, Motorola shall produce a detailed privilege log to LG.

Next, to the extent LG requests production of e-mail communications as they relate to Vizio's purchase of the patents, the court denies this request. First, Motorola has represented in its response that it provided LG with confirmation that it turned over all of its files pertaining to the patents to Vizio as part of the sale of the patents. (Motorola's Resp. at 5.) Motorola also created a chart detailing the documents it looked for but could not find and confirmed that LG had a copy of the purchase agreement in its possession. (Id.) As argued by Motorola, LG could have sought these e-mail communications from Vizio, but instead it chose to enter into an agreement with Vizio not to produce e-mail communications as part of the discovery process. This court will not require Motorola to produce e-mail communications that Vizio and LG purposefully decided not to seek in the underlying lawsuit. *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (requiring

the plaintiff to "seek discovery from its party opponent before burdening the nonparty" with discovery requests).

## C. Documents Pertaining To Ownership And Rights In The Vizio Patents[11]

LG asserts that the documents pertaining to the ownership and rights in the Vizio patents are relevant to its defenses. (LG's Mem. at 12-13.) LG points out, for example, that one of the patents was excluded from the purchase agreement even though Vizio's complaint alleges that Vizio is the current assignee of that patent. (Id. at 12.) LG contends that if Motorola has retained rights in that patent or any other patents then Vizio cannot assert that patent or others against LG. (Id.) LG further asserts that Vizio's interrogatory responses disclose a chain of assignments for each patent that does not involve Motorola. (Id. at 13.) Thus, LG avers that the titles to the patents remained with GI and not Motorola until they were allegedly transferred to Vizio. (Id.) On this basis, LG claims that these facts call into question Motorola's authority to dispose of patents owned by GI. (Id.) Because a defective transfer of title would strip Vizio of standing to assert the patents, LG asserts that Motorola should produce documents related to its ownership and rights in the Vizio patents. (Id.)

While Motorola does not specifically assert substantive objections to LG's request to produce these documents, it does repeat that it provided LG with confirmation that it turned over all of its files pertaining to the patents to Vizio, including all of the assignment

---

[11] The documents requested by LG's subpoena include request numbers 33, 34, 43, and 46.

13

documents. (Motorola's Resp. at 5.) Motorola further reiterates that it produced a chart for the documents that it looked for, but could not find, including the assignment documents. (Id.) As stated, Motorola also confirmed that LG has a copy of the purchase agreement, which shows the assignment of the patents from GI to Vizio.[12] (Id.) Therefore, the court denies LG's motion to compel as it relates to Motorola's ownership and rights in the patents as Motorola has represented that it turned over all of its files relevant to the patents, including the assignment documents, to Vizio. Also, the court knows of no barrier preventing LG from seeking ownership documents from Vizio that would verify Vizio's standing to sue in the underlying patent case.

### D. Documents Pertaining To Licenses and Products Related To The Patents[13]

LG argues that licenses and products related to the Vizio patents affect LG's defenses and damages theory in the underlying case. (LG's Mem. at 13-14.) Specifically, LG contends that, to date, Motorola has produced only two license agreements identified in the purchase agreement even though there are many other license agreements identified in the purchase agreement. (Id.) LG avers that Motorola's claim that these two licenses are the only licenses that pertain to the patents-in-suit is not credible because GI's license agreement with a certain company expressly names four of the Vizio patents by number and also covers

---

[12] The ownership of the patents remained with GI until GI assigned the patents to Vizio. (Schmidt Aff. ¶ 5.)

[13] The documents requested by LG's subpoena include request numbers 9, 30, 35, 36, 37, 38, and 39.

14

three others by implication. (Id. at 14.) Accordingly, LG asserts that Motorola should be required to produce all of the license agreements contained in the purchase agreement so that LG can make an independent assessment as to whether any of the agreements pertain to the Vizio patents. (Id.)

Motorola, on the other hand, avers that the licensing agreements demanded by LG are not relevant to the underlying lawsuit because they do not relate to the Vizio patents. (Motorola's Resp. at 14-15.) Motorola points out that it has produced to LG the two relevant licensing agreements. (Id.)

Because Motorola represents that it has produced the relevant licensing agreements, the court denies LG's motion to compel as to this issue. However, Motorola is ordered to submit an affidavit verifying that these two licensing agreements, of the licensing agreements identified in the purchase agreement, are the only agreements pertaining to the Vizio patents.

**Conclusion**

For the foregoing reasons, LG's motion to compel is granted in part and denied in part. Motorola is ordered to comply with the following by August 19, 2010: (1) produce a copy of the 13 documents identified in its privilege log; (2) produce records pertaining to GI's participation in the development and implementation of SCTE 07 and ITU-T J.83; (3) produce records reflecting its predecisional analysis of the value of the Vizio patents and the validity and enforceability of these patents; (4) submit an affidavit verifying that other than the two licensing agreements it has already produced to LG, the other licensing agreements

15

identified in the subject purchase agreement do not pertain to the Vizio patents; and (5) submit to LG an affidavit detailing its search activities and attesting to the absence of any responsive documents if its search does not turn up any documents ordered herein.

**ENTER:**

_____
**Young B. Kim**
**U.S. Magistrate Judge**